**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FRANKLIN D. FURY, JR., | ) | CASE NO. 5:11-cv-1660 |
| | ) | |
| Plaintiff, | ) | JUDGE ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Franklin D. Fury, Jr. ("Plaintiff"), challenges the final decision of

Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"),

denying his applications for a Period of Disability ("POD"), Disability Insurance Benefits

("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act").  This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United

States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for

a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge

recommends that the Commissioner's final decision be AFFIRMED.

## I.    PROCEDURAL HISTORY

On February 5, 2008, Plaintiff filed applications for a POD, DIB, and SSI and

alleged a disability onset date of October 10, 2007.  (Tr. 51.)  The applications were denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 51.)  On June 1, 2010, an ALJ held Plaintiff's hearing.  (Tr. 51.)  Plaintiff appeared, was represented by counsel, and testified.  (Tr. 51.)  A vocational expert ("VE") also appeared and testified.  (Tr. 51.)  On June 30, 2010, the ALJ found Plaintiff not disabled.  (Tr. 61.)  On June 7, 2011, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision.  (Tr. 1.)

On August 9, 2011, Plaintiff filed a complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  On December 27, 2011, Plaintiff file his Brief on the Merits.  (Doc. No. 13.)  On February 10, 2012, the Commissioner filed his Brief on the Merits.  (Doc. No. 14.)  On February 24, 2012, Plaintiff filed a Reply Brief.  (Doc. No. 15.)

Plaintiff alleged one assignment of error:  the ALJ failed to consider whether Plaintiff met or medically equaled Listing 12.05 in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings") and determine that Plaintiff was disabled thereunder.

## II.  EVIDENCE

### A.    Personal and Vocational Evidence

Plaintiff was 40 years old on his alleged disability onset date.  (Tr. 60.)  He has a limited education and is able to communicate in English.  (Tr. 60.)  Plaintiff indicated during his interview at a Social Security Administration field office that the highest grade he completed in high school was the 11th grade, and that he had attended special

2

education classes at that time. (Tr. 202.)  He has past relevant work experience as an industrial cleaner.  (Tr. 60.)

### B.   Medical Evidence

It is undisputed that Plaintiff's impairments include a history of seizures, headaches, alcohol dependence, tremors, and depression.  (Tr. 53.)  Plaintiff's cognitive functioning, however, is the only relevant medical issue related to the disposition of Plaintiff's assignment of error.  Accordingly, the following is a brief summary of Plaintiff's medical history regarding his cognitive functioning.

On March 18, 2008, Plaintiff presented to Dr. James M. Lyall, Ph.D., a psychologist, upon referral from the Bureau of Disability Determination for a psychological evaluation to assess Plaintiff's mental status and general intelligence. (Tr. 330-33.)  Dr. Lyall indicated that Plaintiff reported the following.  Plaintiff was held back in the first grade of primary school.  (Tr. 330.)  He graduate from high school, but he took special education classes.  (Tr. 330.)  He had poor reading skills.  (Tr. 332.)  He had a driver's license but was not permitted to drive because he had a seizure disorder. (Tr. 330.)  He had been able to pass his driving test to obtain a driver's license, but only upon his fourth attempt and with the assistance of earphones.  (Tr. 330.)

Dr. Lyall further reported the following.  Dr. Lyall was able to understand Plaintiff's verbalizations completely.  (Tr. 331.)  Plaintiff had "some mild difficulty understanding complicated questions."  (Tr. 331.)  Dr. Lyall tested Plaintiff on Wechsler Adult Intelligence Scale, third edition ("WAIS-III"), and indicated that Plaintiff exhibited a verbal IQ of 72, a performance IQ of 72, and a full scale IQ of 69.  (Tr. 334.)  Dr. Lyall concluded that Plaintiff had borderline intellectual functioning at the low end of the

3

range.  (Tr. 332.)

Dr. Lyall assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 55[1] and opined that Plaintiff's borderline intellectual functioning moderately impaired Plaintiff's abilities to perform simple repetitive tasks and withstand the stress and pressure associated with day-to-day work activity.  (Tr. 333.)  Specifically, Plaintiff "would have difficulty in jobs that require a quick understanding of spoken directions or an ability to read moderately complicated directions."  (Tr. 333.)  Plaintiff "might be able to cognitively manage his money" if he were granted benefits.  (Tr. 333.)

On April 7, 2008, state agency reviewing psychiatrist Steven J. Meyer, Ph.D., assessed Plaintiff's mental functioning in a psychiatric review technique and indicated the following.  (Tr. 286-299.)  Dr. Meyer assessed Plaintiff under Listing 12.04 regarding affective disorders, Listing 12.05 regarding mental retardation, and Listing 12.09 regarding substance addiction disorders.  (Tr. 286.)  Plaintiff had borderline intellectual functioning under Listing 12.05.  (*See* Tr. 290.)  He was mildly limited in his activities of daily living; he was moderately limited in his abilities to maintain social functioning, concentration, persistence, or pace; and he had no episodes of decompensation.  (Tr. 296.)

Also on April 7, 2008, Dr. Meyer assessed Plaintiff's mental residual functional capacity ("RFC") as follows.  (Tr. 336-38.)  Plaintiff was moderately limited in his abilities

---

[1]  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers.  See Diagnostic and Statistical Manual of Mental Disorders 34 (American Psychiatric Association, 4th ed. rev., 2000).

to:  understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods of time; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others.  (Tr. 336-37.)  There was no evidence of limitation in his abilities to carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary limits; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and be aware of normal hazards and take appropriate precautions.  (Tr. 336-37.)  Plaintiff otherwise was not significantly limited in any other areas of functioning.  (Tr. 336-37.)

Dr. Meyer summarized that Plaintiff was capable of simple and some moderately complex and routine work in a setting with regular expectations, occasional and intermittent interactions with others, and some assistance as needed at times of change in routine.  (*See* Tr. 338.)

On July 18, 2008, state agency reviewing psychologist Roseann Umana, Ph.D., affirmed Dr. Meyer's opinions.  (Tr. 362.)

Between April 19 and 23, 2010, Plaintiff presented and was admitted to the University Hospitals Epilepsy Center upon referral for evaluation and treatment of "spells" of fatigue.  (Tr. 449-52.)  Dr. Hans O. Luders, M.D., Ph.D., attended to Plaintiff

5

and reported that Plaintiff's childhood development was normal and that his "developmental milestones were up to par with age." (Tr. 451.)

### C.    Hearing Testimony

#### 1.    Plaintiff's Hearing Testimony

Plaintiff testified at his hearing as follows.  He last worked as an industrial cleaner, where he worked in shifts at power plants and refineries to clean furnaces and repair equipment. (Tr. 16-17.)  He performed that job for three or four years, and he stopped working at that job in October 2007 because of his seizures. (Tr. 15-17.)  At that time, he had a seizure and was told that he could no longer work at his job. (Tr. 15-16.)  He graduated from high school but took special education classes throughout his entire schooling because he had a "slow learning disability" and had difficulty with reading, writing, and math. (Tr. 27-28, 35.)  He required four attempts to pass his driver's license examination; however, he had difficulty with the driving portion of the test and not the written portion, as he drove over the speed limit. (Tr. 34.)

#### 2.    Vocational Expert's Hearing Testimony

The ALJ posed the following hypothetical to the VE:

> Imagine . . . a person of the claimant's age, education, and past relevant work . . . whose ability to perform work at any exertional level is limited as follows.  Never to be exposed to ladders or scaffold[s], never to be exposed to excessive heat or humidity or hazards, specifically unprotected heights, industrial machinery and commercial driving. Limited to simple tasks, requiring goal-oriented work rather than production rate pace work. Requiring low-stress work that . . . requires no more than occasional decision making.

(Tr. 37.)  The VE testified that such a person would not be able to perform Plaintiff's past relevant work. (Tr. 37-38.)  The ALJ then modified her hypothetical as follows:

> Imagine the same person now limited to no more than light work.  Lifting 20 pounds occasionally, 10 frequently; standing or walking for six of an eight-hour workday; sitting for six of eight-hour workday; unlimited push/pull and all the other limitations included in the first hypothetical.  However, this person potentially as often as once a week endures a medical emergency of some type that requires that they stop work for up to an hour and . . . after that they be dismissed for the day.

(Tr. 38.)  The VE testified that such a person would not be able to perform any light work.  (Tr. 38.)

The ALJ thereafter asked whether such a person who would have to stop working for medical emergencies once a month could perform light work.  (Tr. 38-39.) The VE responded that such a person would be able to work as an assembler of small products (for which there were 288,000 jobs in the nation, 25,000 jobs in the state, and 5,500 jobs in the region), inspector and hand packager (for which there were 240,000 jobs in the nation, 22,500 jobs in the state, and 4,500 jobs in the region), and electronics worker (for which there were 860,000 jobs in the nation, 35,000 jobs in the state, and 5,000 jobs in the region).  (Tr. 39.)

The ALJ further asked whether the occupation base would be limited if the person described in the third hypothetical also had tremulous hands that shook on occasion.  (Tr. 41.)  The VE responded that the occupation base would be limited by such a condition.  (Tr. 41.)

The ALJ then asked whether such a person who could only occasionally perform fine fingering manipulation could perform other light work.  (Tr. 41.)  The VE testified that such a person could work in 440 different types of lights jobs, including as a housekeeper (for which there were 916,000 jobs in the nation, 38,000 jobs in the state, and 7,500 jobs in the region), vending machine attendant (for which there were 138,000

7

jobs in the nation, 8,000 jobs in the state, and 2,500 jobs in the region), and cafeteria attendant (for which there were 300,000 jobs in the nation, 14,000 jobs in the state, and 4,000 jobs in the region).  (Tr. 41-42.)

The VE verified that his testimony was consistent with the Dictionary of Occupational Titles ("DOT") and its companion publication, the Selected Characteristics of Occupation.  (Tr. 36-37.)

### 3.    Plaintiff's Counsel's Statements and Argument

Plaintiff's counsel stated during Plaintiff's hearing that Plaintiff's main impairment was his seizure disorder.  (Tr. 13.)  Counsel observed that Dr. Lyall opined Plaintiff functioned in the borderline range with only moderate restrictions, and counsel emphasized that he believed Plaintiff's seizures were severe enough to meet or medically equal the Listings.  (Tr. 14.)  Counsel acknowledged that the only evidence of Plaintiff's special education classes was from a narrative set forth in a mental RFC dated April 2008, and that the record did not contain any other evidence of those classes or "score records."  (Tr. 14.)  The ALJ indicated that he would keep the record open for fourteen days to receive additional records from Plaintiff's recent stay at the hospital.  (Tr. 42.)  Plaintiff's counsel did not indicate that Plaintiff wanted or intended to supplement the record with his school records as well.  (Tr. 42.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  A claimant is considered

8

disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national

9

economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant met the insured status requirements of the Social Security Act through June 30, 2012.

2.    The claimant has not engaged in substantial gainful activity since October 10, 2007.

3.    The claimant has the following severe impairments:  history of seizure disorder, headaches, alcohol dependence, tremors[,] and depression.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work . . . as long as that work does not involve climbing ladders or scaffolds, or exposure to extreme heat or humidity or unprotected heights, or operating industrial machinery, or commercial driving, or fingering more than occasionally.  He can perform work which involves simple tasks, at goal-oriented work as opposed to production rate pace work, and which is low stress defined as requiring no more than occasional decision-making.

6.    The claimant is unable to perform any past relevant work.

. . . . .

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.    The claimant has not been under a disability, as defined in the Social Security Act, from October 10, 2007, through the date of this

10

decision.

(Tr. 53-61.)

## V.    LAW & ANALYSIS

### A.    Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

11

The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.  *Shinseki v. Sanders*, 556 U.S. 396, 129 S. Ct. 1696, 1706 (2009).

**B.    The ALJ's Step Three Assessment Under the Listings**

Plaintiff contends that the ALJ erroneously failed to consider him under Listing 12.05 regarding "mental retardation" at the third step of his analysis, and that the ALJ should have done so because the record supports the conclusion that he meets or medically equals Listing 12.05C.  For the following reasons, this assignment of error is not well taken.

The ALJ stated that he assessed Plaintiff under Listing 11.00 regarding "neurological disorders" and Listing 12.00 regarding "mental disorders."  (Tr. 55.)  He found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments," in part because "[n]o treating or examining physician has indicated findings that are consistent with the record as a whole and would satisfy the severity requirements of one of the listed impairments." (Tr. 55.)  The ALJ further explained that, in reaching his conclusion, he "considered the opinions of the State Agency consultants who evaluated the claimant or the claim at the initial and reconsideration levels of the administrative review process" and who "reached the same conclusion."  (Tr. 55.)  The ALJ thereafter discussed the record evidence and explicitly evaluated Plaintiff under the criteria of Listing 12.04 regarding "affective disorders."  (Tr. 58.)  The ALJ did not explicitly mention or discuss Listing 12.05.

Listing 12.05 provides the following:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

> . . . . .

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Listing 12.05.  A claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph, as well as any one of the four sets of criteria. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

It is the claimant's burden to show that she meets or medically equals an impairment in the Listings. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987) (per curiam).  When a claimant is represented by counsel, typically it is counsel's responsibility to structure the claimant's case in a way that claims of disability are adequately explored. *See Carrico v. Comm'r of Soc. Sec.*, No. 5:09-cv-2083, 2011 WL 646843, at *8 (N.D. Ohio Jan. 21, 2011) (citing *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir.1997)).  Here, Plaintiff's counsel before the Social Security Administration neither argued that Plaintiff met or medically equaled Listing 12.05C, nor attempted to include in a hypothetical any additional limitations regarding intellectual

13

deficits.[2]  Although Plaintiff's counsel observed that evidence showed Plaintiff functioned in the borderline range, counsel emphasized that he believed Plaintiff's seizures, not cognitive deficits, were severe enough to meet or medically equal the Listings.  Further, counsel recognized that Plaintiff's school records of special education classes were not before the ALJ, and he did not indicate whether Plaintiff wanted or intended to submit such records to the ALJ.

Nevertheless, Plaintiff now contends that the following evidence shows he meets or medically equals Listing 12.05C and, therefore, the ALJ should have assessed him under that Listing explicitly:

- Plaintiff indicated in his application for disability benefits that he took special education classes in school.

- Dr. Lyall indicated that Plaintiff reported he had taken special education classes.

- Dr. Meyer evaluated Plaintiff under Listing 12.05 in his psychiatric review technique.

- Dr. Lyall indicated that Plaintiff exhibited a full scale IQ of 69 on the WAIS-III test.

- Dr. Lyall found that Plaintiff had borderline intellectual functioning at the low end of the range.

- Plaintiff testified at his hearing that he took special education classes in school and had difficulty with reading, writing, and math.

- Plaintiff testified at his hearing that it took him four attempts to pass the examination to obtain his driver's license.

---

[2] Counsel was put on notice that the Administration did not believe Plaintiff met or medically equaled Listing 12.05.  Dr. Meyer assessed Plaintiff's mental RFC under Listing 12.05 and found that Plaintiff functioned in the borderline range with only mild and moderate restrictions.  Dr. Meyer's report was included in the record before the ALJ at the time the ALJ held Plaintiff's hearing.

14

Although Plaintiff argues how the record supports the conclusion he meets or medically equals Listing 12.05C, substantial evidence supports the conclusion that Plaintiff does not meet that Listing.[3]

For a claimant to show that his impairment matches an impairment in the Listings, he must meet all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To meet Listing 12.05, the claimant must *presently* suffer significantly subaverage general intellectual functioning with deficits in adaptive functioning. *See English v. Comm'r of Soc. Sec.*, No. 2:10-cv-489, 2011 WL 3584333, at *3 (S.D. Ohio Aug. 15, 2011). Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills. *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 698 (6th Cir. 2007).

Although Plaintiff exhibited a full scale IQ of 69 on the WAIS-III test, IQ scores alone are not dispositive of a claimant's intellectual functioning because they are only part of an overall assessment. *See* Listing 12.00D(6)(a) ("[S]ince the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."); *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 126 (6th Cir. 2003) (upholding the ALJ's decision where an examining psychologist found that

---

[3] Plaintiff's reports that he required taking his driving test four times to obtain his driver's license do not necessarily support the conclusion that he had any cognitive deficits, as Plaintiff testified that he had trouble with the driving part of the test, not the written part.

although the claimant's IQ scores examined in isolation would tend to indicate mental retardation, the psychologist concluded that the claimant was actually in the borderline range of intelligent functioning); *McDonald v. Sec'y of Health & Human Servs.*, 786 F.2d 1165 (Table), 1986 WL 16598, at *5 (6th Cir. Feb. 25, 1986) (per curiam) (finding that the claimant's description of her past relevant work render her IQ score suspect).

No medical source diagnosed Plaintiff with mental retardation, and although an actual diagnosis of mental retardation is not required to satisfy Listing 12.05, the lack of such a diagnosis remains a relevant consideration.  *See Thomas v. Comm'r of Soc. Sec.*, No. 08-cv-1365, 2010 WL 1254788, at *11 (N.D. Ohio Mar. 25, 2010) (collecting cases).  Plaintiff testified that he worked at his prior industrial cleaner job for three or four years; the job involved working in shifts to clean furnaces and repair equipment; and he stopped working at that job in October 2007 because of his seizures, not because of any cognitive inability to perform the work.  This work history supports the conclusion that Plaintiff was able to interact socially on a daily basis and, therefore, did not suffer sufficient deficits in adaptive functioning to meet or medically equal Listing 12.05.  S*ee West*, 240 F. App'x at 698.  Dr. Lyall was able to understand Plaintiff's verbalizations completely during his examination, which supports the conclusion that Plaintiff could communicate effectively.  And Dr. Meyer opined that Plaintiff was only mildly limited in his activities of daily living and moderately limited in his abilities to maintain social functioning, concentration, persistence, or pace.

Significantly, there is insufficient evidence that any subaverage general intellectual functioning with deficits in adaptive functioning set in before Plaintiff was 22

years old.  Most of the evidence to which Plaintiff cites consists of Plaintiff's subjective

reports that he took special education classes in school.  There is no other evidence in

the record of Plaintiff's general intellectual functioning or adaptive functioning before the

age of 22, such as IQ scores,[4] report cards, or reports from his teachers or school

counselors during that time.[5]

      Finally, Plaintiff has not taken issue with the ALJ's findings that:  Plaintiff did not

suffer a severe cognitive impairment; Plaintiff did not have marked limitations in his

---

[4] Plaintiff cites *Bilka v. Commissioner of Social Security*, 252 F. Supp. 2d 472
(N.D. Ohio 2002), for the proposition that because there is no evidence that
Plaintiff suffered any kind of trauma since his developmental period, his IQ
score obtained as an adult can be presumed to reflect his lifelong cognitive
functioning.  The court in *Bilka* noted that the Eleventh Circuit has held that
"absent evidence of sudden trauma that can cause sudden retardation, the IQ
tests [taken when the claimant was an adult] create a rebuttable presumption
of a fairly constant IQ throughout [the claimant's] life."  *Bilka v. Comm'r of Soc.
Sec.*, 252 F. Supp. 2d 472, 475 (N.D. Ohio 2002) (quoting *Hodges v. Barnhart*,
276 F.3d 1265, 1268 (11th Cir. 2001)).  The court in *Bilka* did not adopt the
Eleventh Circuit's holding, however, but distinguished it; and Plaintiff does not
cite any Sixth Circuit case law in agreement with the Eleventh Circuit on this
point.  Further, this Court need not decide the issue because, as already
explained, Plaintiff failed to present sufficient evidence that he *presently* suffers
significantly subaverage general intellectual functioning with deficits in adaptive
functioning and failed apprise the ALJ that he believed he met or medically
equaled Listing 12.05C.

[5] Plaintiff states that he presented the Commissioner with his school records and
claims that the Commissioner "neglected to include them into the record."
(Pl.'s Br. 9; Pl.'s Reply 3.)  But the transcript of the hearing before the ALJ does
not support this contention and Plaintiff has not explained when he allegedly
presented such evidence to the Commissioner, attached the alleged evidence
to his Brief on the Merits or Reply Brief and cited it in support of his argument,
and set forth a legal argument for remand to consider such records.
Accordingly, this issue is deemed waived.  *See Rice v. Comm'r of Soc. Sec.*,
169 F. App'x 452, 454 (6th Cir.2006) ("It is well-established that 'issues averted
to in a perfunctory manner, unaccompanied by some effort at developed
argumentation, are deemed waived.'") (quoting *McPherson v. Kelsey*, 125 F.3d
989, 995–996 (6th Cir.1997)).

daily living activities, social functioning, or ability to maintain concentration, persistence, or pace; and Plaintiff's limitations would adequately be accommodated with a restriction to simple tasks in low-stress environments that do not involve production paces.  (*See* Tr. 58, 59.)  These findings support the conclusion that Plaintiff does not meet or medically equal Listing 12.05.  *See West*, 240 F. App'x at 698.

As Plaintiff failed to present sufficient evidence that he met or medically equaled Listing 12.05 and failed to raise the issue before the ALJ, and because substantial evidence supports the ALJ's conclusion that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment in the Listings, this assignment of error is not well taken.  There is no basis to conclude that the ALJ should have assessed Plaintiff explicitly under Listing 12.05 and specifically under Listing 12.05C.

## VI.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.


<u>s/ Nancy A. Vecchiarelli</u>
U.S. Magistrate Judge

Date:  June 1, 2012


## OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of this notice.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**

18